**In re John C. ROBERTSON and Melva L. Robertson, Debtors.**

**Bankruptcy No. 4–88–5198.**

United States Bankruptcy Court, D. Minnesota.

Sept. 22, 1989.

John A. Hedback, Roseville, Minn., for debtors.

Michael Hoverson, St. Paul, Minn., for Velma Prachar, creditor.

## MEMORANDUM ORDER GRANTING SANCTIONS UNDER RULE 9011

NANCY C. DREHER, Bankruptcy Judge.

The above entitled matter came on for hearing before the undersigned on a motion by Velma Prachar, a creditor, for an award of attorneys fees and costs to be taxed as administrative expenses. Appearances were as follows: Michael Hoverson for the movant and John Hedback for the debtor. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103. This is a core proceeding.

## FACTS

Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code on December 20, 1988. In their Schedule A–1 they listed $16,000.00 owing to various tax authorities; in their Schedule A–2, secured debt of $100,750.00, largely attributable to debt on their homestead; and in their Schedule A–3, $40,080.00 of unsecured debt without priority. Upon advice of counsel, debtors, who are the sole shareholders of J.C. Robertson Construction, Inc., included in the Schedule A–3 unsecured debt, a series of potential obligations to creditors of the corporation. The purpose, according to debtors' counsel, was to discharge in their personal bankruptcy any personal obligations they might have on corporate debt. With respect to most of the corporate creditors, debtors listed the amount of the obligations as unknown. One of these potential obligations was a debt to Velma B. Prachar, referenced as being disputed, with the amount unknown. Another was a debt to Norwest Bank, referenced as contingent in the amount of $28,000.00.

The debt to Velma Prachar arises out of a contract she made with the construction company pursuant to which it agreed to build her a condominium. She asserts that she made a downpayment on the condominium in the sum of $30,000.00, but that the corporation failed to deliver marketable title. Thus she asserts that the corporation owes her $30,000.00 in contract damages. She does not explain how the corporation debt became, if it ever did, a personal liability. At the time the petition was filed she had commenced an action against the corporation and the debtors seeking fraud and breach of contract damages.

The debt to Norwest arose out of the debtors' personal guarantee of an operating loan given by Norwest to the construction company. The corporation owed the bank $140,000.00 at the time of the filing of the petition in bankruptcy and was in default. The debtors had each personally guaranteed that debt. The loan was collat-

eralized by various parcels of property that the corporation was attempting to develop. At the time of the filing the bank had not foreclosed on its collateral. Because of the default on the payments, however, the bank was entitled to and apparently had called the debtors on their personal guarantee.

Debtors' Chapter 13 Plan filed with their petition proposed to pay their creditors $300.00 per month, with that sum increasing to $645.00 after one year. The plan also called for the debtors to contribute $3,000.00 from construction work to be completed post filing.

Prachar filed an objection to confirmation, asserting that the petition had been filed in bad faith because the debtors had not demonstrated an ability to make the payments they proposed. Prachar also asserted that the debtors were ineligible for Chapter 13 relief under § 109(e) of the Bankruptcy Code because their unsecured debts exceeded $100,000.00. In connection with the latter argument, Prachar contended that the debtors' listing of the debt to Norwest in the sum of $28,000.00 (apparently the anticipated amount of liability that might be claimed by Norwest after the foreclosure of the real property) was inaccurate and that instead debtors should have included the full amount due on the guarantee at the date of the filing, which was $140,000. That amount would, of course, have put the debtors over the $100,-000.00 limitation in and of itself. In addition, Prachar contended that debtors' other unsecured debts, including the $30,000.00 debt she claimed owing to her, amounted to $76,000.00 for a total unsecured, non-contingent and liquidated indebtedness of $213,559.00. As a result of Prachar's objection the confirmation hearing was continued several times during which time Prachar's counsel deposed debtors.

Debtors had filed the Chapter 13, they assert, for the principal purpose of preserving their homestead. They were behind on mortgage payments on their home which they wanted to keep. They made the payments under the plan until the summer of 1989, but sensing a settlement of their dispute with the mortgagee on their homestead, they did not make the lump sum payment of $3,000.00. Each continued to be gainfully employed. Finally, by midsummer they had reached agreement with the mortgagee and determined to dismiss their Chapter 13 case. They have now done so. In the meantime, Prachar still had on file her objection to the confirmation of the Plan, which had never been ruled upon. In making that objection, she claims that she incurred over $5,000.00 in costs and expenses, including attorneys fees.

## DISCUSSION

Prachar seeks to have this Court order that she receive payment of the attorneys fees and costs and expenses she claims she incurred in connection with making and pursuing the objection to confirmation. Further, she seeks to have these costs determined to be an administrative expense, and to have this Court order the trustee to pay her out of the amount of funds paid to the trustee in connection with the Chapter 13 case. She asserts that she is entitled to this treatment pursuant to 11 U.S.C. § 1326(a)(2), 11 U.S.C. § 503(b), Rule 54(d) of the Federal Rules of Civil Procedure, and Minn.Stat. § 549.21. Prachar in her moving papers made no mention of Rule 9011, although at argument, when the court raised the issue, her counsel agreed that Rule 9011 would be another potential vehicle for recovery of the costs and attorneys fees that she seeks.

Section 1326(a)(2) provides no relief such as that sought by Prachar. That section of the Code merely provides that if no plan is confirmed, the trustee shall pay to the debtor the payments that have been made under the plan, after first deducting administrative expenses. *See* 11 U.S.C. § 503(b). Creditors' activities in pursuing the objection to discharge are not an administrative expense under section 503(b). There is no showing that the costs she incurred were an expense from which the estate derived substantial benefit. *See In re Briggs Transportation Co.*, 47 B.R. 6 (D.Minn. 1984). I find no authority and the creditor

cites none for the proposition advanced, namely that a creditor who pursues an objection to confirmation so as to obtain a dismissal is entitled to an administrative expense award (presumably under 11 U.S.C. § 503(b)(3)(D) and (b)(4)).

██ As for Federal Rule of Civil Procedure 54(d), that rule has no application in Bankruptcy Court. Rather, Bankruptcy Rule 7054(a) provides that only subsections (a)-(c) of Federal Rule 54 apply in adversary proceedings in bankruptcy court. Bankruptcy Rule 7054(b), however, also provides that the court may allow costs to the prevailing party in an adversary proceeding in certain cases. Bankruptcy Rule 9014 provides that Bankruptcy Rule 7054 is applicable to contested matters including contested motions, unless the court orders otherwise. However, even if Rule 7054(b) applies to Prachar's objection to confirmation of the Chapter 13 plan filed by the debtors, the Rule provides little or no aid to Prachar in her attempt to be paid for her costs and attorneys. First, Prachar was not a prevailing party as that term is used in the Rule. Debtors voluntarily dismissed their case and Prachar's objections were never ruled upon. Second, the costs allowed are extremely limited in nature, include generally only filing fees and limited other costs, and not attorneys fees.

██ Minn.Stat. § 549.21 provides that a Minnesota State Court may award attorneys fees, costs and expenses in the case of "bad faith" litigation. It has no application in a federal bankruptcy court.

██ The real question raised by Prachar's motion is whether the debtor or the debtor's counsel are subject to being sanctioned under Bankruptcy Rule 9011 which provides:

> Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, statement of intention, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Bankruptcy Rule 9011(a). Rule 9011 is a certification provision; it compels an attorney who files a petition in bankruptcy to make a reasonable inquiry into the law and the facts so as to determine whether the client is eligible for relief. Bankruptcy Rule 9011(a). If in hindsight it appears that a reasonable inquiry into either the law or the facts would have led to the conclusion that the client could not qualify for Chapter 13 relief and this deficiency was patent, filing a petition for relief would violate Rule 9011. *In re Borden,* 104 B.R. 167 (Bktcy.D.Minn.1989). In such a case, the court would have no discretion: it would have to award sanctions, but would have discretion to determine the nature of those sanctions and the manner in which they would be paid. *Id.*

The question, then, is whether in this case a reasonable inquiry into the facts and law would have demonstrated the patent impropriety in the filing of a Chapter 13 petition on behalf of the debtors. Prachar makes two basic arguments in this regard.

First, she asserts that it was demonstrably improper to file for relief under Chapter 13 because the debtors exceeded the monetary limits of section 109(e), which provides that:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less that $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated unsecured debts that aggregate less than $100,000 and uncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e). She asserts that the debtors' $140,000 guaranty of the corporate debt to Norwest automatically put the debtors over the $100,000 monetary limit for unsecured debt which at the date of the filing was noncontingent and liquidated. Second, she asserts that debtors' testimony at examinations conducted in the course of the bankruptcy proceedings demonstrated that debtors would never have the wherewithal to make the proposed payments under the plan.

The latter argument will be dealt with first, as it is easily addressed. If this court were to find that an inability to make plan payments under the Chapter 13 Plan constituted bad faith filing, virtually every Chapter 13 plan filed in this district might be suspect. The vast majority of Chapter 13 plans fail for one reason or another. While we make every effort to keep the debtors realistic in their commitments under plans, inability to pay the plan payments nonetheless pervades the system. Moreover, the debtors did make their plan payments for so long as they were in Chapter 13 and they had the funds to make the lump sum payment of $3,000.00 which they proposed. There is a virtual dearth of any persuasive evidence to support the claim that they proposed a plan that they knew they could not live with in the future.

■ I turn now to the question of whether the debtors were patently ineligible for Chapter 13 relief because their unsecured debts exceeded the $100,000.00 limitation. That issue turns solely on the question of whether the liability on the guaranty to Norwest was noncontingent and liquidated at the date of filing the petition for relief. Debtors' counsel acknowledges that debtors' obligation to Norwest became noncontingent at the moment of default by the corporation in its obligations to Norwest; this default had occurred prior to the date of filing of the petition. However, debtors' counsel asserts that the debt was unliquidated at the date of filing because Norwest had obtained rights in collateral securing the corporation's indebtedness in addition to the personal guarantees of the debtors and had not foreclosed on that collateral. Until such foreclosure had taken place, according to debtor's counsel, the indebtedness of the debtors to Norwest was not liquidated.

The guaranty signed by the debtors, however, by its terms purported to be an absolute guaranty of the corporate indebtedness up to $249,364.68. Debtors guaranteed payment of any such sum, and not merely its collection. Therefore, Norwest had the right to require the debtors to pay any such sum; Norwest was under no obligation to resort to the security. *Central State Bank v. Hanson,* 158 Minn. 269, 270, 197 N.W. 283 (1924). Consequently, debtors' unsecured debt to Norwest based on the guaranty was noncontingent.

Furthermore, the unsecured debt was liquidated in the amount of $140,000.00 on the date the debtors filed their petition in bankruptcy, since reference to the guaranty disclosed that debtors were absolutely obligated to pay the full amount owed by the corporation. *Sylvester v. Dow Jones & Co. (In re Sylvester),* 19 B.R. 671 (Bktcy.App. 9th Cir.1982). Thus, debtors were ineligible for relief under Chapter 13 of the Bankruptcy Code by virtue of their noncontingent, liquidated, unsecured debt to Norwest, regardless of the fact that Norwest had neither commenced nor concluded foreclosure proceedings on the real estate that secured its debt. 11 U.S.C. § 109(e). *See*

*also In re Wilson,* 9 B.R. 723 (Bktcy.E.D. N.Y.1981) (guarantor of corporate debt ineligible for relief in Chapter 13 in spite of the fact that secured party had not foreclosed collateral prepetition; fact that secured creditor might subsequently release debtor of absolute obligation to pay full amount of corporate debt does not affect situation at the date of filing); *DeKalb Bank v. Flaherty (In re Flaherty),* 10 B.R. 118 (N.D.Ill.1981) (guarantee of corporate debt is noncontingent at the date of default by the corporation; guarantor ineligible for Chapter 13 relief); *In re Williams,* 51 B.R. 249 (Bktcy.S.D.Ind.1984) (guarantee of corporate debt is noncontingent and liquidated, even though secured has collateral not yet foreclosed upon); *In re Pulliam,* 90 B.R. 241 (Bktcy.N.D.Tex.1988) (corporate debt guaranteed at the date of filing is noncontingent and must be included in the calculation of the monetary limitations).

■■■■ By reasonable inquiry into the facts and the law, debtors' counsel could have ascertained that debtors were ineligible for relief under Chapter 13 of the Bankruptcy Code. Research to obtain the answer to this question was neither time consuming, nor difficult. Debtors' counsel, moreover, is an expert in the bankruptcy area who appears before this court regularly. With such experience he may be held to a somewhat higher standard of responsibility under Rule 9011. Since it appears and appeared from the outset that debtors filed under an inappropriate chapter of the Bankruptcy Code, the court has no alternative but to award sanctions for violation of Rule 9011. It should not be argued that the creditor suffered no damage because the debtors could have filed under Chapter 7. Obviously, these debtors had tactical reasons for pursuing relief under Chapter 13. Presumably these included their desire to delay long enough so as to be able to preserve their homestead, a goal they have now accomplished. In the meantime, Prachar's state court action against debtors for remedies in connection with the loss on the condominium have been halted. There is little equity in asserting that, because dismissal came on a voluntary basis after debtors had accomplished their purpose, they ought not pay something to their creditors who have been disadvantaged in the interim.

The question of the amount of the sanction to be awarded is another matter. I have carefully reviewed the voluminous time sheets that have been submitted by Prachar's counsel in support of the award of fees. Prachar seeks recompense of $1,268.24 in reimbursement of disbursements, many of which appear attributable to pursuit of the underlying dispute between Prachar and the debtors rather than to pursuit of the objection to confirmation of the Chapter 13 plan. She also seeks $3,985.40 in attorneys fees, and again many of the entries are attributable to pursuit of the underlying claim rather than to dismissal of the case or to research on matters not at all relating to the bankruptcy case. Rather than assessing the request for sanctions on a line by line basis, I reach the conclusion that Prachar should be awarded the reasonable amount of costs and attorneys fees that should have been anticipated to be incurred in making an objection to confirmation based on debtors' ineligibility for relief. In the court's view, such attorneys fees and costs (including the cost of a deposition if one was necessary on that subject) would be in the approximate amount of $2,000.00.

Because the error in this case was that of counsel, the debtors not having been implicated in this failure to comply with Rule 9011, the entire amount should be payable by counsel for the debtors. In this regard, one further note is appropriate. In the recent past, the volume of cases flooding the bankruptcy courts has increased at a dramatic pace. In the last year this has been especially true in the area of Chapter 13 filings. The statistics are dramatic; Chapter 13 filings are up at an extraordinary pace. A further statistic is irrefutable; the great bulk of these cases fail. They probably never should have been filed as Chapter 13's or, if they had been so filed, the plans should have been more realistic. Excessive filings and failed plans are problem enough without adding to it filings that do not, on their face, belong in one

chapter or another. The court depends on counsel who specialize in this area to some substantial degree to know when to file a Chapter 13 and when one is inappropriate. Where even a minimal degree of care has not been taken to determine whether the client is eligible for relief, this court should not be burdened with the case and the creditors should not be burdened with the problems created by inappropriate filings. There is nothing unfair, inequitable or improper in applying the tools we have been given, including Rule 9011, to bring some order to chaos.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

The motion of Velma Prachar is granted. Velma Prachar is awarded costs and attorneys fees in the sum of $2,000.00 to be paid within 15 days of the date of this order solely by the debtors' counsel, John Hedback. To the extent that Prachar requested that the sanctions be paid from sums on deposit with the Chapter 13 trustee as an administrative expense, the request is denied.